UNITED STATES OF AMERICA, Plaintiff.,

*v.*

DR. VICTOR COLL Y CUCHI, CAYETANO COLL Y CUCHI, WILLIAM R. BENNETT, AND FRANK F. HARDING, Dfts.

San Juan, Criminal, No. 3141.

Opinion filed March 22, 1923.

*Maj. Ira K. Wells,* United States District Attorney, for the United States.

*Mr. Frank H. Dexter* for Cayetano Coll y Cuchi.

ODLIN, Judge, delivered the following opinion:

On March 16, 1923, one of the defendants in this proceeding, viz., Cayetano Coll y Cuchi, an attorney of this court, filed his answer under oath to the information herein, and on the same day, upon said answer being read in open court a motion was presented orally by Mr. Dexter as counsel for the said Cayetano Coll y Cuchi that the information be then and there dismissed as against the latter upon the ground that in and by said answer he had purged himself of any contempt, and also of any charge of contempt which might be embodied in said information. The matter was argued orally by Mr. Dexter, and thereupon the district attorney asked for four days' time in which to present authorities, which has now been done, and likewise there has been received an argument in writing submitted by Mr. Dexter.

I will not burden this opinion by setting out the information at length, but on pages 8 and 9 there are specific averments that the said defendant Cayetano Coll y Cuchi, acting as attorney for his brother, the defendant Dr. Victor Coll y Cuchi, in the two cases for conspiracy which have been pending against the latter and others for several months last passed and which have not been tried, brought to the office of the United States district attorney, while the latter was absent in the states, an unsigned statement marked "Declaration of Felix Torres;" and also that this document was presented to John L. Gay, assistant United States district attorney, who examined the said document and observed that it was not signed, and there-

upon called the attention of the said Cayetano Coll y Cuchi to that fact, whereupon the latter stated that as attorney for his brother he had advised him not to sign the same, and further stated that there was no evidence against his brother, who desired to visit the United States at an early date and did not want to go while charges were pending against him. It is further specifically set forth in the information that the said Cayetano Coll y Cuchi then knew all the facts and circumstances surrounding the making of said statement and knew that said statement so submitted to John L. Gay was false, incorrect, and incomplete; and it is further specifically alleged that the said Cayetano Coll y Cuchi in presenting said paper to John L. Gay as attorney for Dr. Victor Coll y Cuchi intended that the said John L. Gay should regard the same as true, full, and correct, and with the intention then and there of having the said John L. Gay act upon said statement as being true, complete, and correct. It is further alleged that the said statement was brought to the said John L. Gay by the said Cayetano Coll y Cuchi, not for the purpose of an investigation by the said John L. Gay, but for the purpose of having the latter act upon the same as the truth and the full truth, although the said Cayetano Coll y Cuchi well knew at the time that the same was false, incomplete, and incorrect.

The question presented is not free from difficulty. In the brief submitted by Mr. Dexter he has referred me to numerous cases in state courts where it was held that in a contempt of this nature a denial under oath of all intent to deceive, and an assertion that the defendant acted in good faith, with the desire to assist justice rather than to obstruct it, is conclusive and admits the party so answering to his immediate discharge. I

find, however, in the said brief prepared by Mr. Dexter reference to only two cases of Federal courts.

The first one of these is a very old case decided by the United States circuit court in Massachusetts in 1814, entitled United States v. Dodge, originally reported in 2 Call. 313, now found reported as Fed. Cas. No. 14,975. The decision is extremely short, the name of the judge who wrote it does not appear, it being a per curiam, and the notes show that the doctrine of this case was thereafter disapproved by the supreme court of New Hampshire twice and by the supreme court of Indiana three times. It seems that Dodge was charged with contempt of court because he used force in rescuing a man named Shaw, who was a prisoner in the custody of the United States marshal under an indictment for treason.

The other Federal case cited by Mr. Dexter is entitled Re Perkins, decided by District Judge Purnell in the eastern district of North Carolina in the year 1900, reported in 100 Fed. 950. It seems that a deputy marshal wrote a very disrespectful letter to a United States commissioner, and the latter issued a rule requiring the deputy marshal to show cause why he should not be attached and punished for contempt. The deputy marshal filed an answer admitting the writing of the disrespectful letter, expressed his regret for writing it, and withdrew any reflection or intention of being disrespectful or disobedient to the court or its orders, and alleging that he had great respect for the court and it always would be his pleasure to uphold the dignity of the court. The commissioner held that this was not sufficient, not sincere, and not bona fide, and also that the facts therein set forth as an excuse were offered under compulsion and were not voluntary or sincere. He thereupon imposed pun-

ishment upon the deputy marshal, who applied to the district judge. The latter held that while the letter was highly improper and personally offensive, it was not sufficient to support a charge of misbehavior of an officer of the court in his official transactions. The district judge held that the explanation of the deputy marshal operated to purge himself of all contempt, and the proceedings were discharged by order of the district judge. At page 953 of this opinion, however, Judge Purnell distinctly says that the question whether a person answering a charge of contempt has been guilty of a wilful contempt or has properly purged himself thereof is a question for the court in the exercise of a sound judicial discretion.

In support of this proposition he cites the case of Re Savin, 131 U. S. 267, 33 L. ed. 150, 9 Sup. Ct. Rep. 699. Turning to the report of this case, we find that it reached the United States Supreme Court by an appeal taken from the circuit court of the United States for the southern district of California. Savin claimed that he was illegally imprisoned by order of the district judge in February, 1889, and sentenced to serve one year in the county jail of Los Angeles county, California; he was found guilty of having unlawfully attempted and endeavored to deter a certain witness from testifying for the United States in a case then on trial, and that Savin unlawfully offered money to this witness not to testify. Savin then asked for a habeas corpus which the circuit court denied, and he then appealed to the Supreme Court of the United States. Mr. Justice Harlan, writing the opinion for that court, distinctly rules that in a proceeding against a party for contempt, the court is not bound to require service of interrogatories upon the party charged with contempt in order to afford him an opportunity

to purge himself of such contempt in answering, but may *in its discretion* adopt such mode of determining the question as it deems proper, having due regard to the *essential* rules that prevail in the trial of matters of contempt.

Studying this decision in the Perkins Case, and in connection with the rule laid down by the United States Supreme Court in the Savin Case, and keeping in mind that the original judgment which imposed punishment on Perkins for contempt did not emanate from any judge, but from a United States commissioner, the conclusion to my mind is irresistible that neither of the two Federal cases cited by Mr. Dexter can control my decision in the question now pending for determination.

It is proper also that I should call attention to the more recent decision of the case of the United States v. Shipp, reported in 203 U. S. 563, 51 L. ed. 319, 27 Sup. Ct. Rep. 165, 8 Ann. Cas. 265, where several parties were held guilty of contempt for violating an order of judgment of the United States Supreme Court itself. It was urged by counsel for these men that their sworn answers were conclusive, and that if such answers were false the parties might be prosecuted for perjury, but that in the contempt proceeding they were to be tried, if they so elected, solely upon their oaths. Mr. Justice Holmes says distinctly that the court does not propose to go into the history of the notion that a denial on oath operates as a purging of the contempt, but he does say that it may be an intrusion or perversion of the Canon Law, as is suggested by the very phrase purgation by oath (juramentum purgatorium). He goes on to state that if this be true, it is a fragment of a system of proof which does not prevail in theory or as a whole, and the reason

why it has not disappeared may perhaps be found in the rarity with which contempts occur.

Justice Holmes also refers to the decision already mentioned by me, viz., the Savin Case, to which he refers as having a visible leaning toward the conclusion reached in the Shipp Case. But the really important part of the decision in the Shipp Case consists in the court's reference to the language of Revised Statutes, § 725, Comp. Stat. § 1245, which must of course control all contempt proceedings in the Federal courts. Justice Holmes says distinctly that this section embodies the law so far as it goes. Then he adds this significant sentence: "We see no reason for emasculating the power given by that section, and making it so nearly futile as it would be if it were construed to mean that all contemnors willing to run the risk of a conviction for perjury can escape."

But before closing this opinion, I wish to say that I have been guided largely by the language of an important decision of the circuit court of appeals of the eighth circuit rendered in 1912 in the case of the Merchants Stock & Grain Co. v. Board of Trade, reported in 120 C. C. A. 582, 201 Fed. 20. Three distinguished judges sat in that case, and the main opinion was written by Judge Walter I. Smith. Judge William C. Hook also sat in this case and concurred in every point except that he expressed a doubt that a defendant in a charge of criminal contempt might be compelled to testify and incriminate himself. In a short dissenting opinion he says that this question is not involved in the case then under consideration, but he qualifies his own language by using the adverb "probably." The real importance of this decision is that the court lays down eight specific rules on this general subject of criminal contempts.

**46**

First, that they are tried summarily, and not in the regular course or way; second, that there is no right of trial by jury; third, that courts of chancery and other courts without criminal jurisdiction do have power to punish for so-called criminal contempt; fourth, that in cases of criminal contempt there can be no change of venue allowed; fifth that for a criminal actual contempt a defendant may without waiver and without his consent be sentenced in his absence; sixth, that an act which is a contempt of court and also a crime may be punished both by the summary provision and by indictment, and neither will bar the other; seventh, that the defendant is not entitled to be confronted with the witnesses against him in open court; and eighth (which is qualified by the adverb "probably"), that a defendant in a criminal contempt case may be examined as a witness so long as he is not required to incriminate himself in a sense other than to convict him of contempt.

Enough has been stated by me to show that in the Federal courts proceedings for contempt are strictly sui generis. It is to my mind perfectly clear that the doctrine of purging by answer under oath does not exist to-day in the Federal courts of the United States. If Cayetano Coll y Cuchi submitted this document to John L. Gay in good faith and with the intention to assist justice rather than to impede it, in other words, if his answer is true, of course he is not guilty of contempt. But if the charge in the information is true and Cayetano Coll y Cuchi presented that paper, knowing that it was false, and for the purpose of endeavoring that his brother should escape punishment, and that the district attorney of the United States should be deceived and misled thereby, then of course he is unquestionably guilty of contempt. The unpleasant duty is be-

fore me of ascertaining that intent as best I can. At all events, I am very clearly of the opinion that the question of the purging of the contempt must be resolved against Cayetano Coll y Cuchi, and it is so ordered.

To this ruling Cayetano Coll y Cuchi excepts.